IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RAY TURNER, #224856, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-01311 |
| ) | |
| HENRY STEWARD, Warden, ) | Judge Campbell |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner Ray Turner, a state prisoner incarcerated at the Northwest Correctional Complex in Tiptonville, Tennessee, filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1). The respondent has filed an answer in opposition to the petition, along with a complete copy of the underlying state-court record. The petition is ripe for review. For the reasons set forth herein, the petition will be denied and this action dismissed with prejudice.

**I.     PROCEDURAL BACKGROUND**

On May 23, 2008, the petitioner was found guilty by a Davidson County Jury of conspiracy to deliver more than 300 grams of cocaine and delivery of more than 300 grams of cocaine. On July 16, 2008, the petitioner was sentenced to 60 years' incarceration on each count, to be served concurrently. (ECF No. 11-1, at 152–53 (Judgments).) The conviction and sentence were affirmed on direct appeal. *State v. Miller et al.*, No. M2008-02267-CCA-R3-CD, 2010 WL 1644969 (Tenn. Ct. Crim. App. April 22, 2010), *perm. appeal denied* (Tenn. Oct. 18, 2010).

The petitioner filed a *pro se* petition for post-conviction relief, along with a supporting memorandum, on June 9, 2011. (ECF No.13-12, at 41–111.) Counsel was appointed, and an amended petition was filed. (ECF No.13-12, at 121–28.) The trial court conducted a hearing (*see* ECF No. 13-13) and denied the petition. (ECF No. 13-12, at 135–53.) That decision was affirmed on appeal as well. *Turner v. State*, No. M2012-02311-CCA-R3-PC, 2013 WL 5503683 (Tenn. Ct. Crim. App. Oct. 1, 2013), *perm. appeal denied* (Tenn. Feb. 24, 2014).

Petitioner Turner filed his petition under 28 U.S.C. § 2254, along with a supporting memorandum, in

this Court on June 4, 2014. The respondent has filed an answer and a complete copy of the underlying state-court record. The petition is timely, and this Court has jurisdiction.

## II. STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:[1]

> This case results from an ongoing drug investigation involving the Defendants [Kenneth Miller and Ray Junior Turner]. A Davidson County grand jury issued a superseding indictment on December 13, 2007, charging the Defendants Miller and Turner with conspiracy to deliver 300 grams or more of cocaine [and] with delivery of 300 grams or more of cocaine. . . .
>
> We will summarize the proof in the light most favorable to the State. Agent Shelly Smitherman, with the Tennessee Bureau of Investigation ("TBI"), testified that she was the agent in charge of the investigation involving the Defendants, which began in December 2005. Agent Smitherman obtained a wiretap order allowing her to intercept the Defendants' phone calls; she explained that agents in the wireroom listened to the phone calls and that they would relay pertinent information to officers in the field conducting surveillance of the Defendants.
>
> Through intercepting these phone calls, it was determined that a drug deal was to take place on March 24, 2006, at the Rivergate Mall. The Defendant Miller was to deliver a kilogram ("kilo") of cocaine to an unidentified individual coming from Kentucky. Police conducted surveillance of the Defendant Miller throughout the day. At 11:34 a.m. on this day, the Defendant Miller phoned the Defendant Turner and asked him to "come and drop it off." TBI Special Agent Steve Talley testified that Kavares Davis ("Davis") arrived at the Defendant Miller's apartment at 1:34 p.m. At 1:47 p.m., officers observed the Defendant Turner, along with two other individuals, arrive at the Defendant Miller's apartment. The Defendant Turner went inside the residence through the garage door. After his arrival, the blinds were closed. A few moments later, the blinds were reopened, and the Defendants and Davis exited the apartment and stood out front talking for a time. Around 2:50 p.m., the Defendant Turner and Davis left the residence.
>
> Around 6:30 p.m., officers observed the Defendant Miller leave his apartment in his black Chevrolet Impala, heading toward the Rivergate area. When he arrived at the mall, the Defendant went inside the food court area and purchased some cookies. He received a call from Davis and then returned to his vehicle. The Defendant drove to the food court entrance, and a man got inside the vehicle. They drove around to the other side of the mall and parked near a green Pontiac Grand Am with Kentucky tags. Detective Herbert Kajihara, with the Twentieth Judicial Drug Task Force, saw the man who had been in the Defendant Miller's car walk back toward the mall. After the Defendant Miller left, Det. Kajihara continued to observe the Kentucky vehicle. He then saw the same man exit the mall, along with another male and a female juvenile, and get inside the car. The individuals were carrying packages.

---

[1] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Officers followed the green Pontiac to a gas station. At the gas station, an individual later identified as Ned Wayne Thompson ("Thompson"), got out of the vehicle and placed something that looked like a bag in the trunk. When Thompson left the gas station, the vehicle proceeded onto Interstate 65. Although radar was not used, Officer Michael Wilson of the Metropolitan Police Department paced the vehicle traveling 80 miles per hour in a 70 mile-per-hour zone. Officer Wilson stopped the vehicle. The State did not want to compromise the wiretap investigation, so the officers proceeded under the auspice that they were stopping the individuals for a traffic violation, and they obtained probable cause to search the vehicle due to a K-9 alert. Hidden behind carpeting inside the trunk, officers discovered two separately packaged bricks of cocaine, weighing approximately two kilograms.

Officers then procured search warrants for the Defendants' residences. . . . At the Defendant Turner's residence, Agent Talley was in charge of collecting evidence. Evidence collected included five notebooks containing drug ledgers found in the kitchen garbage can, digital scales, a vacuum bag sealer, two loaded handguns, a "kilo press," and a "cutting agent."

Kavares Davis, initially a co-defendant in this case, testified that he had entered a guilty plea to possession of .5 grams or more of cocaine and received an eight-year sentence under the terms of the agreement. Davis affirmed that the Defendant Turner was his uncle and that the Defendant Miller was his cousin. The Defendant Miller supplied him with cocaine at the time of his March 2006 arrest and had done so "off and on" for two or three years. In November or December 2005, Davis told the Defendant Miller that he did not like dealing with the Defendant Turner because of his high prices, $20,000 for a kilo of cocaine; however, the Defendant Miller continued to deal with the Defendant Turner.

Davis went to the Defendant Miller's apartment on the evening of March 23, 2006. The Defendant Turner was already there; he had brought three bricks or kilos of cocaine for the Defendant Miller, which were sitting on the table. The Defendant Miller said one of the kilos was "bad," and the Defendant Turner promised to replace it with another one the next day. The Defendant Turner took the "bad" kilo with him when he left.

According to Davis, the Defendant Turner showed up the following morning with two other men. Davis was already there because he and the Defendant Miller were supposed to go get something to eat. Davis went downstairs to let the Defendant Turner in through the garage. The Defendant Turner went upstairs, but Davis stayed downstairs. Davis testified that the Defendant Turner was dropping off the new kilo of cocaine, which he had in his arms. The Defendants then came back down to the basement, and all three men exited and stood outside talking for a while.

Later that day, the Defendant Miller asked Davis to follow him to Rivergate Mall to meet Thompson, aka "Kentucky." Davis phoned the Defendant Miller who was in the food court area of the mall; the Defendant Miller stated he was "waiting on them to get done eating." Davis made plans to meet the Defendant Miller at a Mapco gas station following the exchange. After they met at the gas station, they proceeded to the Defendant Turner's residence, where only the Defendant Miller went inside. About five minutes later, he came back out to the car and grabbed a bag, which he stuffed in his coat, and went back inside. Later that evening, Davis and the Defendant Miller were arrested at a Mexican restaurant in Hermitage.

. . . . Additionally, on March 10, officers in the wireroom began listening to numerous conversations involving the Defendants, wherein the Defendants used code words for exchanging drugs and money.

*Miller*, 2010 WL 1644969, at *1–3 (footnote omitted). As previously indicated, based on this evidence, the jury returned a guilty verdict against Turner on the charges of conspiracy to deliver more than 300 grams of cocaine and delivery of more than 300 grams of cocaine.

## III.　ISSUES PRESENTED FOR REVIEW

In his petition for habeas corpus, Turner asserts that the conviction violated his constitutional rights on the following grounds:

1. That the evidence was insufficient as a matter of law to support the two drug-related convictions;

2. That trial counsel was ineffective for failing to investigate the wiretap recordings and failing to move to suppress the wiretaps;

3. That trial counsel was ineffective for failing to object to the introduction of evidence obtained illegally through the use of wiretaps; and

4. That trial counsel was ineffective for failing to make a "*Bruton*" objection to the introduction of statements made by co-defendants, in violation of the Fourth Amendment.

## IV.　STANDARD OF REVIEW

### A. Defaulted or Unexhausted Claims

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

Once his federal claims have been raised in the highest state court available,[2] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). If a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). The "cause" standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts. *Id.* (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (internal quotation marks omitted)). A fundamental miscarriage of justice results when one who is "actually" innocent is convicted. *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011).

---

[2] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

### B. Standard of Review of Fully Exhausted Claims

Even when a petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 raises claims that have been properly exhausted in the state courts, this Court's review of the state court's resolution of those issues remains quite limited. First, this court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, a claim asserting only a violation of state law, even if fully exhausted, is not cognizable in federal habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

> Further, under § 2254(d),
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by the state court's adjudication of the petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). This court must presume the correctness of state-court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> . . . . [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11.

With these principles in mind, the court will turn to the examination of the claims raised in Turner's petition for habeas relief.

## V. ANALYSIS AND DISCUSSION

### A. Claim 1: The Insufficiency of the Evidence

Turner asserts that the evidence presented at trial was insufficient to convict him of conspiracy to deliver 300 grams or more of cocaine or actual delivery of 300 grams or more of cocaine, principally on the basis that the evidence against him was "circumstantial." (ECF No. 2, at 6.) He also argues that the testimony of witness Kavares Davis was not corroborated as to the charges against Turner, in particular because there was no evidence that Turner agreed to participate in a conspiracy involving a "common goal" (*id.* at 8).

The petitioner raised a sufficiency-of-the-evidence claim in his direct appeal, where he also argued that Davis's accomplice testimony was not corroborated. The Tennessee Court of Criminal Appeals rejected the claim, as follows:

> Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we

determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. Moreover, on appellate review of a denial of a motion for judgment of acquittal, we apply the same standard as a question of the sufficiency of the convicting evidence. . . .

The Defendants argue that State failed to provide sufficient evidence to corroborate the accomplice testimony of Kavares Davis. It is well settled that, "[i]n Tennessee, a conviction may not be based solely upon the uncorroborated testimony of an accomplice." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). This "very salutary rule" is designed to prevent the "obvious dangers" of allowing a defendant to be convicted solely on the basis of an accomplice's testimony. *Sherrill v. State*, 321 S.W.2d 811, 814 (Tenn. 1959). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate the testimony of an accomplice.

With respect to the nature, quality, and sufficiency of the evidence necessary to corroborate an accomplice's testimony, this Court has held as follows:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.
>
> . . . .
>
> The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplices testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

*State v. Griffis*, 964 S.W.2d 577, 588–89 (Tenn. Crim. App. 1997).

The proof necessary to corroborate the accomplice's testimony must include "some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity." *Shaw*, 37 S.W.3d at 903. In other words, the corroboration must include some fact establishing the identity of the defendant as a criminal actor. It is generally for the trier of fact to determine whether sufficient corroboration exists.

However, as this Court has previously pointed out, "[e]vidence which merely casts a suspicion on the accused . . . is inadequate to corroborate an accomplice's testimony." [*State v. Boxley*, 76 S.W.3d 381, 387 (Tenn. Crim. App. 2001).]

Pursuant to the wiretap order and police intercepted phone calls, officers believed that the Defendant Miller would be meeting with an individual from Kentucky at the Rivergate Mall for a drug transaction on March 24, 2006. Kavares Davis testified that the Defendant Turner delivered three kilos of cocaine to the Defendant Miller on March 23; however, one of these kilos was "bad," so the Defendant agreed to replace it the following day. On the morning of March 24, the wireroom intercepted a phone call between the Defendants, wherein the Defendant Miller asked the Defendant Turner to "come and drop it off." According to Davis, the Defendant Turner arrived at the apartment that morning with the replacement kilo of cocaine. He stated that he let the Defendant Turner in through the garage and that, after the sale was concluded, they stood outside of the apartment and talked for a little while. Officers observed all of these coming and goings at the apartment and noticed the blinds being closed once the Defendant Turner was inside the residence.

Davis testified that, later that day, he followed the Defendant Miller to the Rivergate Mall. Officers intercepted a call between Davis and the Defendant Miller while the Defendant Miller was inside the food court. Based on observations made by officers watching the Defendant Miller, it appeared a transaction had occurred between the male in the vehicle with Kentucky plates, later identified as Ned Wayne Thompson, and the Defendant Miller. Detective Kajihara saw Thompson put something inside the trunk of his car while he was stopped at a gas station. Thompson was then pulled over for speeding and, upon a search of the vehicle, officers located two separately packaged kilos of cocaine.

The Defendant Miller and Davis met at a Mapco gas station and proceeded to the Defendant Turner's residence. The Defendant Miller first went inside. He then came back outside, put a bag inside his coat, and returned inside the residence.

After the procurement of search warrants, officers found drugs and/or drug paraphernalia at the Defendants' residences. Much of the evidence was used in the resale process. During the time officers were intercepting the Defendants' calls, the Defendants used coded language common to drug dealers, setting up meetings to sell drugs and obtain money. Both Defendants had drug ledgers to record which customers owed money and how much was owed. Moreover, at the March 10 pull of the Defendant Miller's trash, items common for use in drug dealing were discovered.

From consideration of the proof in the record before us, we find the evidence sufficient to corroborate the testimony of the accomplice Kavares Davis. The accomplice's testimony was corroborated by the taped telephone conversations, officers observations, and the evidence recovered from the respective residences. This issue is without merit.

*Miller*, 2010 WL 1644969, at *11–13 (some internal citations omitted).

As this Court previously determined in addressing Turner's co-defendant's assertion that the evidence was insufficient to support *his* conviction, the Tennessee Court of Criminal Appeals accurately stated the applicable state and federal law, correctly identifying *Jackson v. Virginia* as the standard governing claims relating to the sufficiency of the evidence. The state court's decision was not contrary to and did not involve an unreasonable application of clearly established federal law, and its determination of the facts was not

objectively unreasonable. The petitioner is not entitled to relief on the basis of this claim.

Turner's theory that the evidence was insufficient because it was purely circumstantial was not articulated under that theory in the state courts (*see* Direct Appeal Brief, ECF No. 13-1), and was therefore not fully exhausted. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."). If a claim was not fully presented to the state court and the opportunity to do so has passed, it is procedurally defaulted and subject to dismissal. *Id.* The opportunity to present the new theory is now foreclosed by Tennessee's one-year limitations period on post-conviction claims and one-petition rule. Tenn. Code Ann. § 40-30-102. Turner does not allege any cause to overcome the default. This claim is therefore defaulted and barred from review. Even if that were not the case, the Court notes that "[c]ircumstantial evidence alone [may be] sufficient to sustain a conviction." *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (quotation marks and citation omitted).

**B.      Claims 2 and 3: Counsel's Failure to Investigate or to Challenge the Wiretap Evidence**

Turner asserts that his trial counsel was ineffective for failing to move to suppress the evidence obtained through the wiretaps, failing to further investigate that evidence, and failing to object to the introduction of the evidence obtained through the wiretap. In support of this claim, he argues that the wiretap was obtained for the purpose of investigating his co-defendant Miller and therefore that the evidence obtained through the wiretaps should not have been admissible against him, that the wiretap warrant was not issued by a neutral and detached magistrate, and that there were other investigative means available, such that the wiretap did not meet the "necessity requirement." (ECF No. 2, at 20.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved

objectively unreasonable. The petitioner is not entitled to relief on the basis of this claim.

Turner's theory that the evidence was insufficient because it was purely circumstantial was not articulated under that theory in the state courts (*see* Direct Appeal Brief, ECF No. 13-1), and was therefore not fully exhausted. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."). If a claim was not fully presented to the state court and the opportunity to do so has passed, it is procedurally defaulted and subject to dismissal. *Id.* The opportunity to present the new theory is now foreclosed by Tennessee's one-year limitations period on post-conviction claims and one-petition rule. Tenn. Code Ann. § 40-30-102. Turner does not allege any cause to overcome the default. This claim is therefore defaulted and barred from review. Even if that were not the case, the Court notes that "[c]ircumstantial evidence alone [may be] sufficient to sustain a conviction." *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (quotation marks and citation omitted).

**B.      Claims 2 and 3: Counsel's Failure to Investigate or to Challenge the Wiretap Evidence**

Turner asserts that his trial counsel was ineffective for failing to move to suppress the evidence obtained through the wiretaps, failing to further investigate that evidence, and failing to object to the introduction of the evidence obtained through the wiretap. In support of this claim, he argues that the wiretap was obtained for the purpose of investigating his co-defendant Miller and therefore that the evidence obtained through the wiretaps should not have been admissible against him, that the wiretap warrant was not issued by a neutral and detached magistrate, and that there were other investigative means available, such that the wiretap did not meet the "necessity requirement." (ECF No. 2, at 20.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved

objectively unreasonable. The petitioner is not entitled to relief on the basis of this claim.

Turner's theory that the evidence was insufficient because it was purely circumstantial was not articulated under that theory in the state courts (*see* Direct Appeal Brief, ECF No. 13-1), and was therefore not fully exhausted. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."). If a claim was not fully presented to the state court and the opportunity to do so has passed, it is procedurally defaulted and subject to dismissal. *Id.* The opportunity to present the new theory is now foreclosed by Tennessee's one-year limitations period on post-conviction claims and one-petition rule. Tenn. Code Ann. § 40-30-102. Turner does not allege any cause to overcome the default. This claim is therefore defaulted and barred from review. Even if that were not the case, the Court notes that "[c]ircumstantial evidence alone [may be] sufficient to sustain a conviction." *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (quotation marks and citation omitted).

**B.      Claims 2 and 3: Counsel's Failure to Investigate or to Challenge the Wiretap Evidence**

Turner asserts that his trial counsel was ineffective for failing to move to suppress the evidence obtained through the wiretaps, failing to further investigate that evidence, and failing to object to the introduction of the evidence obtained through the wiretap. In support of this claim, he argues that the wiretap was obtained for the purpose of investigating his co-defendant Miller and therefore that the evidence obtained through the wiretaps should not have been admissible against him, that the wiretap warrant was not issued by a neutral and detached magistrate, and that there were other investigative means available, such that the wiretap did not meet the "necessity requirement." (ECF No. 2, at 20.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved

an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

In considering Turner's ineffective-assistance claim, the state court correctly articulated the standard established by *Strickland*. *Turner v. State*, 2013 WL 5503683, at *6–7. It then reviewed the evidence presented during the post-conviction proceedings, and ruled as follows:

> Trial counsel testified that he and the co-defendant's trial counsel both determined that the only legal ground for a motion to suppress the wiretap was that it was not issued by a neutral and detached magistrate. Petitioner's co-defendant filed a motion to suppress the wiretap evidence claiming that Judge Watkins was not a neutral and detached magistrate because he had represented the co-defendant in a previous case. Trial counsel attended the co-defendant's hearing on the motion to suppress the wiretap evidence to assess the likelihood of petitioner's success on a motion to suppress the wiretap evidence on the same legal grounds.[3] The co-defendant's motion to suppress was denied.
>
> Trial counsel testified that he considered the discovery he had received, the application for the wiretap, the wiretap tapes, the co-defendant's denied motion to suppress[,] the applicable case law, and procedural rules when making the decision not to file a motion to suppress. On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell* [*v. State*], 185 S.W.3d [319,] 326 [(Tenn. 2006)] (citing *Strickland*, 466 U.S. at 689). We conclude that petitioner has failed to prove that trial counsel's performance was deficient in light of the circumstances and trial counsel's specific considerations.
>
> Furthermore, even if trial counsel's performance could be considered deficient, petitioner has not shown prejudice. In order to prove that he was prejudiced by any deficient performance, petitioner needed to demonstrate that the motion to suppress would have been

---

[3] Turner's trial counsel also testified that he did not join the motion because he was retained after his co-defendant's counsel had already filed a motion to suppress the wiretap evidence and after the state had responded.

successful. It would be pure speculation for this court to make that determination based on the scant record and limited testimony provided with regard to this issue. Therefore, petitioner's argument is without merit.

*Turner,* 2013 WL 5503683, at *8.

The state appellate court reasonably applied the *Strickland* standard to conclude that trial counsel's conduct in determining that a motion to suppress would be fruitless and that the petitioner failed to establish that he was prejudiced by the decision. Because that determination was not unreasonable under the circumstances presented here, the petitioner is not entitled to relief on the basis of this claim.

### C. Claim 4: Counsel's Failure to Raise a "*Bruton*" Challenge

The petitioner's remaining claim is that his trial counsel was ineffective for failing to challenge the introduction of incriminating statements made by his co-defendants and intercepted in the wiretaps on the basis that they violated the law pronounced by the Supreme Court in *Bruton v. United States*, 391 U.S. 123 (1968).

In *Bruton*, the confession of a co-defendant who did not take the stand was used against Bruton in a federal prosecution. The Supreme Court held that the introduction of the non-testifying co-defendant's statement violated Bruton's rights under the Confrontation Clause of the Sixth Amendment. That case has no application here, because the statements obtained through the wiretap were not testimonial in nature. *See United States v. Sutton*, 387 F. App'x 595, 602 (6th Cir. 2010) ("Statements made in furtherance of a conspiracy are inherently non-testimonial. . . . [N]on-testimonial out-of-court statements do not implicate the Confrontation Clause.").

Moreover, this claim was not presented to the state courts, and the petitioner is barred from presenting it in the state courts now by Tennessee's one-petition rule governing the filing of post-conviction petitions. Tenn. Code Ann. § 40-30-102(c). He does not argue that any of the circumstances enumerated in Tenn. Code Ann. § 40-30-117(a) permits him to re-open his post-conviction petition in the Tennessee courts. The claims are therefore considered to be exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review unless the petitioner demonstrates both cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Turner, however, has not acknowledged that this claim is defaulted. He has not argued cause or prejudice to overcome the procedural default, nor does he allege that the failure to consider the claims will result in a fundamental miscarriage of justice. The petitioner is not entitled to relief on the basis of this claim.

**VI.     CONCLUSION**

For the reasons set forth herein, Ray Turner's petition under § 2254 will be denied and this matter dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Under the standard articulated in *Miller-El*, the Court finds that none of the claims raised in Turner's petition merits further review. A COA will not issue.

An appropriate order is filed herewith.

_____
Todd Campbell
United States District Judge